# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-CA-01384-SCT

*IN THE ESTATE OF PATRAUNA HUDSON:*
*FANNY HUDSON, INDIVIDUALLY AND ON*
*BEHALF OF THE ESTATE OF PATRAUNA*
*HUDSON*

*v.*

*YAZOO CITY, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/09/2016 |
| TRIAL JUDGE: | HON. JANNIE M. LEWIS |
| TRIAL COURT ATTORNEYS: | ROBERT S. ADDISON |
| | STEVEN JAMES GRIFFIN |
| | BARRY W. HOWARD |
| | WALTER WILLIAM DUKES |
| | BRADLEY EUGENE DEAN |
| | WILEY JOHNSON BARBOUR |
| COURT FROM WHICH APPEALED: | YAZOO COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | DAVID NEIL McCARTY |
| | BARRY W. HOWARD |
| ATTORNEYS FOR APPELLEE: | ROBERT S. ADDISON |
| | STEVEN JAMES GRIFFIN |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | REVERSED AND REMANDED - 06/28/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., MAXWELL AND BEAM, JJ.**

**BEAM, JUSTICE, FOR THE COURT:**

¶1. This case arises from the tragic 2014 death of nine-year-old Patrauna Hudson, who

drowned in flash-flood waters that swept through a drainage ditch that ran alongside her

family's residence. Patrauna's estate (the "Estate") filed suit against Yazoo City for

wrongful death under the Mississippi Tort Claims Act (MTCA). The Yazoo County Circuit Court granted summary judgment in favor of Yazoo City (the "City") on all claims filed against it by the Estate, having found Yazoo City immune from liability under both the discretionary-function exception and the open-and-obvious exception contained in Mississippi Code Section 11-46-9. Miss. Code Ann. § 11-46-9(1)(d) and (v) (Rev. 2012).

¶2. The Estate appeals, maintaining that Yazoo City violated numerous city ordinances, along with certain federal regulations, when the City converted a portion of the drainage ditch downstream from the Hudson residence into a covered tunnel with two side-by-side culverts in 2007. The Estate argues that these laws imposed a ministerial duty upon Yazoo City, and the City breached that duty by failing to comply with all the mandatory requirements prescribed by these laws when the city implemented and carried out the 2007 project. Therefore, the Estate contends, the City is not immune from liability under Section 11-46-9(1)(d).

¶3. The Estate further maintains the trial court erred in finding that the "open and obvious" exception provided by Section 11-46-9(1)(v) was applicable in this case. The Estate says the flood danger caused by the City's failure to comply with these mandatory requirements was not open and obvious, and further, subsection (v) is inapplicable to a nine-year-old child who is incapable of negligence.

¶4. We find that the Estate's claim that Yazoo City is liable for the wrongful death of Patrauna that resulted from Yazoo City's failure to comply with its ordinances and federal

regulations under the National Flood Insurance Program (NFIP), fails as a matter of law for failure to state a cause of action.

¶5.     We also find that the Estate alleged in its complaint that Yazoo City was liable for negligently failing to maintain its drainage ditches.  The Estate, however, abandoned this claim under the auspices of the test adopted by this Court in ***Brantley v. City of Horn Lake***, 152 So. 3d 1106 (Miss. 2014), which we recently overruled in ***Wilcher v. Lincoln County Board of Supervisors***, 2016-CA-01429-SCT, 2018 WL 2371859 (May 24, 2018).  Based on our de novo review of the record, there is slight evidence, which if developed further, may create a genuine issue of fact with regard to this claim.  We find the Estate should be given the opportunity to do so.

¶6.     Also, we find the trial court's ruling as to the open-and-obvious exception provided by Section 11-46-9(1)(v) was premature in this instance because factual questions currently remain, according to our review of the record.

¶7.     Accordingly, we reverse and remand for further proceedings consistent with this Court's opinion.

## FACTS AND PROCEDURAL HISTORY

¶8.     On April 6, 2014, an intense storm system moved through Yazoo City, pouring five to six inches of rain on the area in a short amount of time.  Patrauna lived at the corner of Seventh Street and Lamar Avenue with her mother, Fannie Hudson, and several of her younger brothers and sisters, the family having moved there six months earlier.

¶9.     At approximately 8:00 p.m., Fannie instructed the children to go to their rooms and get ready for bed.  When Fannie went to check on the children, Patrauna's eight-year-old sister Patrice told Fannie that Patrauna had gone out the back door to go swimming.  Patrice and the clothes she was wearing were soaking wet.

¶10.    According to Fannie, the family's entire back yard was flooded with water from the ditch that evening, which came up to the back steps of the family home.  Fannie did not know exactly how Patrauna had ended up in the water.  She said Patrice told her that Patrauna had pushed her (Patrice) into the water, and after Patrice got out, Patrice then had pushed Patrauna into the water.  Fannie said according to Patrice, once Patrauna was in the water, Patrauna tried to come back, but the water pulled her back toward the ditch.

¶11.    Patrice later stated in an affidavit:  "On the day my sister drowned [Patrauna] was outside in the backyard playing like she was swimming.  When [Patrauna] got out by the clothes line the water start[ed] to pull her.  She tried to come back but the water pulled her back until it pulled her into the ditch."

¶12.    When Fannie went outside to look for Patrauna, she saw a police officer and other individuals on the street that runs alongside her house.  They all appeared to be searching around the ditch.  Fanny asked them if they had seen a little girl.  The officer told Fanny to go back in the house to make sure she was not inside.  Fanny went back inside and searched but could not find Patrauna.

4

¶13. Law enforcement and community members searched for Patrauna throughout the evening. Her lifeless body was found by a search team the following evening in a drainage ditch about four blocks from her family's residence.

¶14. In March 2015, the Estate filed suit against Yazoo City under the MTCA, claiming Yazoo City had failed to (a) warn Patrauna of the dangerous nature of the Seventh Street drainage ditch; (b) adequately maintain, repair, and inspect the drainage ditch; and (c) require construction and improvements be performed to the drainage ditch in accordance with existing engineering standards, with approval of the appropriate governmental agency.

¶15. Discovery ensued, during which numerous depositions were taken. The Estate submitted an affidavit from Gillian Butler, a private civil engineer in the field of hydrologic and hydraulic engineering. For her expert opinion, Butler relied on all the depositions taken in the case, along with Yazoo City ordinances, flood-insurance study reports, National Flood Insurance Program (NFIP) regulations, public-safety guidelines, and other information.

¶16. Butler submitted a report with her affidavit, detailing a hydraulic analysis she had conducted on two, side-by-side culverts installed downstream from Patrauna's residence in 2007. Each culvert is approximately 405 feet in length, and forty-eight inches and thirty-six inches in diameter, separately. According to Butler's report, the two culverts increased the flood height upstream by approximately two inches and the velocity of flood water at the culvert inlet by 0.35 feet per second.

¶17. Butler opined that, prior to 2007, "storm water appears to have flowed along Seventh Street between Lee Street and Prentiss Avenue in an open ditch (save for the Lee Street

5

crossing)." Based on board minutes taken from a city council meeting held in February 2007 by the Mayor and Board of Aldermen, action was taken to purchase 800 linear feet of drainage pipe for the Seventh Street ditch. The project appeared to have begun in late March or early April 2007.

¶18. In Butler's opinion, the decision to convert the Seventh Street ditch between Prentiss and Lee Avenues into culverts should have triggered an application for a "floodplain development permit." In turn, the application should have included an engineering analysis, along with public-safety considerations under the guidelines and standards for the installation of long culverts. According to Butler, Yazoo City did not follow these guidelines and standards, and the failure to do so led to the dangerous condition that caused Patrauna's drowning.

¶19. James Wayne Morrison, a private civil engineer who provides engineering consulting services to Yazoo City, explained in his deposition that the Seventh Street drainage ditch is part of the Willis Creek drainage system, which was dug in the 1940s. This system originated as a series of open ditches throughout Yazoo City. Morrison said Yazoo City is protected by a levee, and everything that drains inside the levee eventually makes its way to Lake Yazoo, where it is then pumped over the levee into the Yazoo River.

¶20. In describing the course that rainwater runoff takes from Seventh Street to the Yazoo River, Morrison said the "water drains from the hills in a western direction to a lateral ditch through the lateral ditches of [Seventh] Street and then to Martin Luther King and traverses

6

on to the south side of [Seventh] Street [where] it intersects the main trunk line of the Willis Creek Drainage District and then goes south into Lake Yazoo."

¶21. According to Yazoo City, the "Drainage District dissolved in 1995, [and] its land interests within the city limits were conveyed to Yazoo City, including the drainage easement that runs along Seventh Street." The only significant improvement project involving the Seventh Street drainage ditch between the time Yazoo City acquired the drainage easement in 1994 and the date of Patrauna's drowning occurred in 2007, when parallel culverts were installed and covered along the ditch from Lee Avenue to Prentiss Avenue.

¶22. Morrison said the 2007 project was a joint project with Yazoo County. The county supplied the culverts, the equipment, and most of the manpower. Morrison said the City authorized approximately 800 feet of drainage pipe to be laid on Seventh Street, and the City split the cost with the county. Jimmie Drewery, the county road manager, chose the size of the pipes to match the size of the pipes that already existed under the roadway, one forty-eight inches in diameter, and the other thirty-six inches in diameter. The pipes were laid parallel to each other for approximately 400 feet.

¶23. Morrison said his only advice in the project was that the county use bituminous coated pipe "so that the pH of the soil wouldn't eat up the pipe too quickly." Morrison said no hydraulic analysis was performed in 2007. Morrison conducted a hydraulic analysis of the parallel pipes in November 2014, after Patrauna's death. He said the results did not show any increase in the flow of water in the portion of the ditch located beside Patrauna's residence. Morrison clarified, however, that his team did not duplicate the rain conditions

7

of the April 6 event. He said they passed a volume of water equivalent to a ten-year rain event and a twenty-five-year rain event through the pipes. The April 6 event "was a severe extraordinary rain event[,]" much greater than a twenty-five-year rain event–which, according to Morrison, "is a 2 and a quarter inch rain an hour." Morrison said the parallel pipes were sufficient to handle "about a 20, 21 year rain event[,]" because that was the design standard of the existing pipes.

¶24. The record indicates that the Seventh Street drainage ditch in front of Patrauna's residence since has been covered. And Yazoo City has been covering other, similar drainage ditches throughout the city on a step-by-step basis.

¶25. The trial court granted summary judgment in favor of Yazoo City, finding that the City is immune from liability because the maintenance of drainage ditches is a discretionary function, and also because the ditch was an open and obvious danger.

¶26. Relying on *Brantley*, the trial court said it is required first to determine whether the overarching governmental function at issue is discretionary or ministerial. The court must then examine any narrower duty associated with the activity at issue to determine whether a statute, regulation, or other binding directive renders that particular duty a ministerial one, notwithstanding that it may have been performed within the scope of a broader discretionary function. *Brantley*, 152 So. 3d at 1114.

¶27. The trial court found that, while Yazoo City does have ordinances in place that regulate the development of flood-prevention structures, it does not appear these ordinances were intended to assign a ministerial function to the City's ability to build ditches.

8

Therefore, according to the trial court, the city is immune from liability because maintenance of the ditch is a discretionary function under Section 11-46-9(1)(d).

¶28. The trial court also found that, based on the MTCA, a "governmental entity shall not be liable for the failure to warn of a dangerous condition which is obvious to one exercising due care." *See* Miss. Code Ann. § 11-46-9(1)(v) (Rev. 2012). The trial court found that the drainage ditch was an open and obvious danger in this matter. Fanny repeatedly had warned Patrauna not to play in or near the ditch, and Fanny had warned Patrauna on the night in question not to go near the ditch. The court found the fact that Patrauna was nine years old and that her age possibly affected her ability to appreciate the open and obvious danger did not serve as a bar to the open-and-obvious defense.

## STANDARD OF REVIEW

¶29. The grant or denial of a motion for summary judgment is reviewed de novo. *City of Magee v. Jones*, 161 So. 3d 1047, 1049 (Miss. 2015). The evidence is viewed in the light most favorable to the party opposing the motion. *Id*. Only if there is no genuine issue of material fact is the moving party entitled to summary judgment as a matter of law. *Id*. Questions of law, which include proper application of the MTCA, also are reviewed de novo. *Maldonado v. Kelly*, 768 So. 2d 906, 908 (Miss. 2000).

## DISCUSSION

¶30. The Estate argues Yazoo City violated numerous ordinances and federal regulations in its decision to convert a portion of the Seventh Street drainage ditch to culverts in 2007,

9

and this change to the city's drainage system created the dangerous condition that caused Patrauna's death.

¶31. The Estate maintains that Yazoo City had a ministerial duty to comply with its ordinances and controlling federal regulations. The Estate argues that because Yazoo City participates in the National Flood Insurance Program (NFIP), the City, as a participant, is governed by certain federal regulations, one of which provides: "These regulations must be legally enforceable, applied uniformly throughout the community to all privately and publicly owned land with flood-prone . . . areas, and the community must provide the regulations take precedence over any less restrictive conflicting local laws, ordinances, or codes." 44 C.F.R. 60.1(b) (2009).

¶32. The Estate argues that Yazoo City, "in compliance with NFIP federal regulations," has adopted numerous ordinances which together required Yazoo City to "(a) obtain a development permit, (b) submit a plan to the city engineer, (c) conduct a hydraulic analysis, and (d) obtain an engineer's certification before implementing the 2007 project." (Citing Yazoo City, Miss., Code of Ordinances, §§ 11.5-3, 11.5-4, 11.5-5, 11-5.23, 11-5.32, 11-5.43(2), 18.7(a) and (b) (2005)). The Estate submits that Butler's uncontested expert report sets out that Yazoo City "violated all of these ordinances and this regulation in enacting its ultimately deadly change in the drainage system of Yazoo City." For these reasons, according to the Estate, the duties imposed on Yazoo City were ministerial, not discretionary.

10

¶33. For authority, the Estate points to *Mississippi Transportation Commission v. Adams*, 197 So. 3d 406, 412 (Miss. 2016), in which this Court held that the general discretionary function with respect to placement of traffic control devices was rendered ministerial by the Mississippi Transportation Commission's adoption of the Mississippi Standard Specifications for Road and Bridge Construction (the "Red Book"). *Id*. at 412-14. *Adams* reiterated that, under *Brantley*, even when a duty might be discretionary, there may be instances where "narrower duties encompassed in a broad discretionary function may be rendered ministerial through statute or regulation." *Id*. (quoting *Brantley*, 152 So. 3d at 1113).

¶34. According to the Estate, as found in *Adams*, for purposes of Section 11-46-9(1)(d) immunity, any discretionary function Yazoo City had with the 2007 project was rendered ministerial by the City's adoption of the aforementioned ordinances and participation in the NFIP.

¶35. Yazoo City argues, however, that maintenance, inspection, and repair of municipal drainage ditches and channels are discretionary functions as a matter of law. Municipalities such as Yazoo City are authorized–but not required–under Mississippi Code Section 21-19-13 to construct and maintain drainage ditches if they choose to do so. That Section provides, in pertinent part, as follows:

> (1) The governing authorities of municipalities shall have the power to establish, alter and change the channels of streams or other water courses, and to bridge the same, whenever so to do will promote the health, comfort and convenience of the inhabitants of such municipality.

11

(2) The governing authorities of any municipality shall also have the power and authority to incur costs and pay necessary expenses in providing labor, materials and supplies to clean or clear drainage ditches, creeks or channels, whether on public or private property, and to incur costs and pay necessary expenses in providing labor, materials and supplies in order to prevent erosion where such erosion has been caused or will be caused by such drainage ditches, creeks or channels. This paragraph shall not impose any obligation or duty upon the municipality and shall not create any additional rights for the benefit of any owner of public or private property.

Miss. Code Ann. § 21-19-13 (Rev. 2015).

¶36. Yazoo City maintains that because no statutes, ordinances, or regulations impose any affirmative duty on Yazoo City to maintain, repair, or inspect its drainage ditches, Yazoo City officials must use their judgment and discretion in determining whether, when, how, and to what extent these activities are conducted, in accordance with available funding and other resources. Yazoo City further contends that the Estate's reliance upon several provisions in Section 11.5 of the Yazoo City Code of Ordinances and the Yazoo County Flood Prevention Ordinance is misplaced. These ordinances require private developers to obtain from the City (or county, if applicable) a development permit before conducting construction activities within areas designated as special flood hazard areas and specify how to obtain such a permit. The City argues that these ordinances did not place a ministerial duty on Yazoo City to obtain a development permit from itself, nor did they place a ministerial duty on the city engineer to obtain his own authorization before commencing the 2007 project.

¶37. As mentioned, this Court recently overruled the *Brantley* test for determining when a claim against a governmental entity enjoys discretionary-function immunity under Section 11-46-9(1)(d), and restored the two-part, public-policy function test adopted by this Court

12

in ***Jones v. Mississippi Department of Transportation***, 744 So. 2d 256 (Miss. 1999), for making that determination. *See **Wilcher***, 2018 WL 2371859.

¶38. Under the two-part, public-policy function test, courts were directed to consider (1) whether the act involved "an element of choice or judgment; and if so (2) whether the choice of judgment involved social, economic or political policy [considerations]." ***Jones***, 744 So. 2d at 262. ***Brantley*** abandoned this test and instead instructed the courts first to "consider the broadest function involved in order to make a baseline determination of whether the overarching function is discretionary or ministerial." ***Brantley***, 152 So. 3d at 1112-13. After this determination, further examination was then required to determine whether "any narrower duty associated with the activity at issue to determine whether a statute, regulation, or other binding directive renders that particular duty a ministerial one, notwithstanding that it may have been performed within the scope of a broader discretionary function." ***Id***. at 1114-15.

¶39. As ***Wilcher*** explained, ***Brantley***'s aim was to create a more workable rule for determining discretionary-function immunity. ***Wilcher***, 2018 WL 2371859, *3. But while well-intentioned, the new rule manifested an "unworkable departure from longstanding precedent," and overlooked the legislative intent behind Section 11-46-9(1)(d)–most importantly, "policy" considerations. ***Id***.

¶40. ***Wilcher*** noted that ***Brantley***'s analysis "overcomplicates the process of litigating a claim and places the success of a claim on the ability of the injured party's attorney to sift through the myriad and sometimes arcane regulations–creating extra layers of proof, *which*

*may have little or no practical effect on the actual negligent act*." *Id*. (quoting *Crum v. City of Corinth*, 183 So. 3d 847, 854 (Miss. 2016) (Randolph, P.J., concurring in result only) (emphasis in original)).

¶41. The other (and probably most significant) result of *Brantley* was the all-too-apparent and prevalent misunderstanding among practitioners, based on their reliance on *Brantley*, that Section 11-46-9(1)(d) allows for "actions based solely on violations of statutes and/or local ordinances or regulations, which [practitioners] argue impose 'ministerial' duties." *Wilcher*, 2018 WL 2371859, *4. But as *Wilcher* explained, "this practice is certainly not what the Legislature intended[, and is in fact] completely backwards." *Id*.

¶42. *Wilcher* reiterated as follows:

> Section 11-46-9(1) restores sovereign immunity. *Simpson Cty. v. McElroy*, 82 So. 3d 621, 624 (Miss. Ct. App. 2011). It does not in itself create duties. *Id.* Furthermore, regulations do not create causes of action, and the MTCA does not grant a right to recover based on a mere violation of statute or regulation. *Taylor v. Delta Reg'l Med. Ctr.*, 186 So. 3d 384, 390-91 (Miss. Ct. App. 2016). The general rule is that 'a mere violation of a statute or regulation will not support a claim where no private cause of action exists.'" *Id.* (quoting *Tunica Cty. v. Gray*, 13 So. 3d 826, 829 (Miss. 2009)).

*Id*.

¶43. *Wilcher* then pointed out:

> Despite this, *Brantley*'s analysis wrongly zeroes in on applicable regulations and ordinances. And if a regulation is 'ministerial,' this Court began to presume that the alleged violation of that regulation or ordinance, itself, establishes a viable cause of action without even questioning if a claim would exist without the regulation.

14

*Id*. "As a result of ***Brantley***, what the Legislature intended as a shield–discretionary-function immunity under Section 11-46-9(1)(d)–is flipped on its head and is being used as a sword." *Id*.

¶44.   This is what we have in the case before us.  Again, the Estate claims that the NFIP's federal regulations and the ordinances adopted by Yazoo City in furtherance of those federal regulations as part of the City's participation in the NFIP program, impose a "ministerial duty" upon the City to comply with those laws, the breach of which–in this instance–allows for a tortious cause of action arising from wrongful death.  But we find that neither the NFIP's regulations nor Yazoo City's related ordinances create any such cause of action.

¶45.   First, as the Fifth Circuit Court of Appeals has explained, the NFIP is a voluntary insurance program, and its rules do not provide a private right of action.  ***United States v. St. Bernard Parish***, 796 F.2d 1116 (5th Cir. 1985).  "[T]he principal purpose in enacting the NFIP was to reduce through the implementation of adequate land use controls and the availability of subsidized flood insurance, the massive and ever increasing burden of federal flood disaster assistance." *Id*.  But nowhere in the NFIP's language and its legislative history "can we find evidence that Congress had any intent to allow a private cause of action, either expressly or by implication." *Id*.  As the Supreme Court commented in ***Touche Ross & Co. v. Redington***, 442 U.S. 560, 99 S. Ct. 2479, 61 L. Ed. 2d 82 (1979), "when Congress wished to provide a private damages remedy, it knew how to do so and did so expressly."

¶46.   The same goes for the ordinances adopted by Yazoo City in furtherance of its participation in the NFIP.  While Yazoo City is required to comply with these ordinances

15

as part of its participation in the NFIP, none of these ordinances establishes a private right of action against Yazoo City either in personal-injury tort or wrongful death.

¶47. Nor does Section 21-19-13. This section merely authorizes municipalities to construct and maintain drainage ditches; it does not create a right of action or establish a duty of care owed by a municipality to its inhabitants. Miss. Code Ann. § 21-19-13 (Rev. 2015).

¶48. For these reasons, the Estate's claim that Yazoo City is liable for the wrongful death of Patrauna, resulting from Yazoo City's failure to comply with its ordinances and federal regulations under the NFIP, fails as a matter of law for failure to state a cause of action.

¶49. That said, the Estate also alleged in its complaint that the Seventh Street drainage ditch constituted a dangerous condition because Yazoo City had failed to properly maintain the ditch by keeping it free of vegetation, trash and debris. This claim is predicated on ordinary negligence, and is entirely different from the Estate's theory of liability with regard to Yazoo City's failure to comply with ordinances and federal regulations associated with the NFIP. The Estate, however, appeared to disregard this claim along the way.

¶50. Based upon our de novo review of the record, we cannot tell whether the Estate did so based upon its investigation into the facts of the case, or based upon its reliance on **Brantley**.

¶51. Given that the Estate's case was still pending when **Wilcher** handed down, overruling the **Brantley** test and reinstituting the public-policy function test for purposes of Section 11-46-9(1)(d), the applicability of subsection (d) must be decided under the reinstituted public-policy function test. And out of fairness to the Estate, we find the Estate should be allowed

16

the opportunity to fully present its negligence claim, beyond its reliance on the overruled *Brantley* test.

¶52. Furthermore, following careful de novo review of this record, we continue to have questions with regard to the applicability of both subsections (d) and (v) to the current facts in this case. And in fairness to both parties, we decline to enter into a discussion with regard to either exemption under the record in this case.

¶53. For these reasons, we reverse the trial court's decision granting summary judgment in favor of Yazoo City, and we remand the case for further proceedings, allowing for additional discovery, as necessary, under the trial court's discretion.

## CONCLUSION

¶54. The trial court's judgment is reversed, and this case is remanded for further proceedings consistent with this opinion.

¶55. **REVERSED AND REMANDED**.

**WALLER, C.J., RANDOLPH, P.J., COLEMAN, MAXWELL, CHAMBERLIN AND ISHEE, JJ., CONCUR. KITCHENS, P.J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED BY KING, J.**

**KITCHENS, PRESIDING JUSTICE, CONCURRING IN RESULT ONLY:**

¶56. In *Wilcher v. Lincoln County Board of Supervisors*, I predicted that "upon this court's return to the public policy function test, litigants and courts will continue to be required to 'scour the state manual' and 'hunt for other regulations and ordinances' in order to make arguments about whether the activity in question involved any policy considerations." *Wilcher v. Lincoln Cty. Bd. of Supervisors*, 2018 WL 2371859 (Miss. May

17

24, 2018) (Kitchens, J., concurring in result only). While I abstain from reiterating my arguments in opposition to the overruling of **Brantley v. City of Horn Lake**, 152 So. 3d 1106 (Miss. 2014), I write here to observe that my prediction regarding the public-policy function test has come to pass.

¶57.	The majority is correct that Mississippi Code Section 21-19-13 authorizes, but does not require, the governing authority of a municipality to "establish, alter and change the channels of streams or other water courses, and to bridge the same, whenever so to do will promote the health, comfort and convenience of the inhabitants of such municipality" and to "pay necessary expenses in providing labor, materials and supplies to clean or clear drainage ditches, creeks or channels . . . and to incur costs and pay necessary expenses in providing labor, materials and supplies in order to prevent erosion . . . ." Miss. Code Ann. § 21-19-13(1), (2) (Rev. 2015). But that discretionary function is rendered ministerial by narrower requirements that are mandated by city and county ordinances:

1.	Yazoo City, Miss., Flood Damage Prevention Ordinance art. I, § 11.5-23 – requiring a development permit "prior to the commencement of any development activities in the areas of special flood hazard."

2.	Yazoo City, Miss., Flood Damage Prevention Ordinance art. III, § 11.5-32 – establishing required procedures for applying for and obtaining a development permit.

3.	Yazoo City, Miss., Flood Damage Prevention Ordinance art. III, § 11.5-43(2) – requiring, in special flood hazard areas, that "no encroachments, including fill material or structures, shall be permitted unless certification by a professional engineer is provided demonstrating that the cumulative effect of the proposed development, when combined with all other existing and anticipated development, will not increase the water surface elevation of the base flood more than one foot at any point within the community. The engineering

18

certification must be supported by technical data that conforms to standard hydraulic engineering principles."

4.      Yazoo City, Miss., Ordinance 18.7(a) and (b) – requiring a written permit prior to excavation or "any work on or under the surface of the right-of-way of any dedicated street . . . ."

5.      Yazoo Cty, Miss., Flood Damage Prevention Ordinance art. 3, § C – requiring a development permit "in conformance with the provision of this ordinance prior to the commencement of any development activities in the areas of special flood hazard."

6.      Yazoo Cty., Miss., Flood Damage Prevention Ordinance art. 3, § D – "[n]o structure or land shall hereafter be located, extended, converted or structurally altered without full compliance with the terms of this ordinance and other applicable regulation."

7.      Yazoo Cty., Miss., Flood Prevention Ordinance art. 4, § B – detailing the requirements for obtaining a permit.

8.      Yazoo City, Miss., Flood Damage Prevention Ordinance art. I, §§ 11.5-3, 11.5-4, and 11.5-5 – setting forth general requirements "to promote the public health, safety and general welfare and to minimize public and private losses due to flood conditions in specific areas . . . ."

9.      Yazoo Cty., Miss., Flood Prevention Ordinance art. 1, §§ C and D – requiring the county "to promote the public health, safety and general welfare and to minimize public and private losses due to flood conditions in specific areas . . . ."

In addition, the National Flood Insurance Program (NFIP), in which Yazoo City and Yazoo County participate, provides that: "These regulations must be legally-enforceable, applied uniformly throughout the community to all privately and publicly owned land within flood-prone . . . areas, and the community must provide that the regulations take precedence over any less restrictive conflicting local laws, ordinances or codes." 44 C.F.R. § 60.1(b) (2009).

19

¶58. In response to the motion for summary judgment filed by Yazoo City and Yazoo County, Hudson presented uncontradicted expert testimony by Gillian Butler, a civil engineer in the field of hydrologic and hydraulic engineering, in the form of an affidavit. Butler stated that "[t]he standard of care requires that Yazoo County and the City of Yazoo City comply with the provisions of these ordinances" and that "Yazoo County and Yazoo City's failure to comply with the provisions of these ordinances constituted a breach of the standard of care." This breach of the standard of care, Butler opined, "led to the dangerous condition which resulted in the drowning of Patrauna Hudson."

¶59. The majority argues that Hudson has failed to state a cause of action because "neither the NFIP's's regulations nor Yazoo City's related ordinances create any such a cause of action." Maj. Op. ¶ 44. The majority continues: "[w]hile Yazoo City is required to comply with these ordinances as part of its participation in the NFIP, none of these ordinances establishes a private right of action against Yazoo City either in personal-injury tort or wrongful death." Maj. Op. ¶ 46. Both of those regulations, however, which create ministerial duties, establish a standard of care and, concomitantly, remove the cloak of immunity from the governmental entity.

¶60. In *Mississippi Transportation Commission v. Adams*, this Court held that, while Mississippi Code Section 63-3-303 is discretionary, the Mississippi Transportation Commission's adoption of the *Mississippi Standard Specifications for Road and Bridge Construction* (the "Red Book") imposed narrower ministerial duties on the Mississippi Transportation Commission entitling the plaintiff to proceed with her claims. *Miss. Transp.*

20

*Comm'n v. Adams*, 197 So. 3d 406, 413 (Miss. 2016). The *Adams* Court held that the plaintiff had "produced evidence that the defendants had breached certain specific ministerial duties imposed by their own duly adopted regulations." *Id.*[1] Here, as in *Adams*, the plaintiff has presented uncontradicted expert testimony establishing that Yazoo City and Yazoo County "breached certain ministerial duties imposed by their own duly adopted regulations."

¶61.    The majority reiterates *Wilcher*: "'[a]s a result of *Brantley*, what the Legislature intended as a shield—discretionary-function immunity under Section 11-46-9(1)(d)—is flipped on its head and is being used as a sword.'" Maj. Op. ¶ 43 (quoting *Wilcher*, 2018 WL 2371859, at * 4). In his Mississippi Rule of Appellate Procedure 28(k) letter sent following this Court's decision in *Wilcher* on May 24, 2018, Hudson's counsel stated the following:

> Under *Wilcher*, a municipality must still ensure that unsafe conditions or health hazards are not created through flooding. In this case, Ms. Hudson's suit does not second-guess Yazoo City's decision to spend municipal funds to regulate water runoff. Instead, Ms. Hudson filed suit under the theory that the City created a dangerous condition through its failure to follow a ministerial statute, and then failed to warn or correct this dangerous condition. Indeed the city's engineer admitted under oath that the City never did a site plan or an engineering drawing, as required by law. The lone expert testified that the City's failure to follow its own laws directly led to the dangerous condition which killed the little girl.

It is clear, even under the public-policy function test, that plaintiffs will continue to search out and rely upon the narrowest regulations, statues, and ordinances in order to establish the existence of a standard of care and the breach thereof.

¶62.    The quagmire of confusion which has resulted from *Wilcher* continues. Accordingly, I respectfully concur in result only.

_____

[1] While this Court, in *Wilcher*, overruled *Brantley*, *Adams* remains untouched.

**KING, J., JOINS THIS OPINION.**