# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-SA-01818-COA

MARTY CALHOUN, LINDA V. CALHOUN,                    APPELLANTS
RONALD HOLLAND AND JANAN J. HOLLAND

v.

MISSISSIPPI TRANSPORTATION                            APPELLEES
COMMISSION AND MISSISSIPPI
DEPARTMENT OF TRANSPORTATION

| | |
|---|---|
| DATE OF JUDGMENT: | 10/22/2019 |
| TRIAL JUDGE: | HON. DALE HARKEY |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | ALBERT RALPH JORDAN IV |
| | KRISTOPHER W. CARTER |
| ATTORNEYS FOR APPELLEES: | WILLIAM E. WHITFIELD III |
| | KAARA LENA LIND |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 03/30/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**McCARTY, J., FOR THE COURT:**

¶1. Two riders on a parade float filed suit against governmental entities claiming damages from a low-hanging tree limb they believed should have been trimmed back. The trial court granted summary judgment, finding that the plaintiffs did not have any evidence the defendants breached their duty to keep the highway properly maintained. Because there was no proof the Department breached its ministerial duty or that a breach proximately caused harm to the riders, we affirm.

## BACKGROUND

¶2.    Janan Holland and Linda Calhoun were on a parade float in the 2015 St. Patrick's Day parade in Ocean Springs. Pulled behind a pickup truck, the float traveled down Highway 90, passing beneath the large oak trees lining the road. Suddenly, a limb from one of the oak trees smashed into the float, injuring Janan and Linda. The limb landed in the street after the impact. Just the broken part of the limb was sixteen feet long.

¶3.    The women and their respective husbands filed suit against the Mississippi Department of Transportation, the Mississippi Transportation Commission, and the City of Ocean Springs. Their core theory of recovery was that the defendants had a ministerial duty to maintain a clear roadway and breached their duty by allowing the oak tree limb to hang too low.

¶4.    Janan's husband Ronald had been driving the truck pulling the parade float. He had driven the parade route "several times" and never previously experienced any problem with the trees in the area. And as he drove back to the Elks Lodge, he admitted he "did not notice" the tree limb that smacked into the float. There was nothing on the way back from the parade which triggered his attention.

¶5.    For its part, a representative from MDOT testified the department had an employee, a maintenance superintendent named Tracy Woods, who conducted monthly inspections of the highways in and around Ocean Springs. Woods had traveled through that same area within two weeks of the accident and stated that he did not see any low hanging limbs during his monthly inspections. These inspections took the form of Woods driving down the roadways and "eyeballing" for anything that might be a danger. As an MDOT maintenance

engineer called it, Woods would do a "visual windshield inspection."

¶6.    The maintenance engineer further testified that trimmed trees are kept at least 14-feet high to clear vehicles, which "are allowed to be 13 foot 6 inches tall." When MDOT trims trees, "the goal is to keep the street legal[] trucks able to come down the road," and may cut even higher in case of rapid growth.

¶7.    When asked to speculate about how one could have hit the parade float if MDOT actually was doing its job to inspect for low-lying limbs, the maintenance engineer explained at length. First, he reasoned that "something would have happened to [the limb] after the date of inspection." For instance, an oversized vehicle could have hit it, "causing it to hang lower." There was also the reality that oaks simply drop branches–that "sometimes limbs just break and fall." This could come from wind from the environment or from passing vehicles.

¶8.    MDOT likewise claimed that it had not received any reports or complaints about low-hanging limbs in the vicinity. Generally speaking, the City generally trimmed the oak trees in the same corridor down Highway 90.

¶9.    The maintenance operations manager, Tracy Woods, testified he oversaw everything in the locale "[f]rom pothole patching to shoulder work, to mowing, all aspects of maintenance on the highways and right-of-ways." Woods confirmed he just rode the roads once a month, eyeballing for problems.

¶10.    While there was no specific protocol, Woods did use a form "Maintenance Inspection Report" prepared by MDOT. The report had multiple specific areas for a manager to review. Managers were to report back whether there were potholes, rutting, or cracking in the

3

pavement; the condition of the shoulder; if there were vegetation or drainage issues; if roadway signs were missing; the status of markings on the pavement and if there were reflective markers; and several other categories. For many categories the manager could request engineering review. For vegetation, one could either check "Ok" or "Overgrown." There was then a blank for the action required.

¶11. MDOT produced six reports submitted by Woods in 2014 and 2015 where he noted overgrown vegetation, especially around drainage pipe and bridges. Woods testified that if he saw a problem, he would add it to the report. He specifically testified that any limb below 14 feet would be trimmed. Many of the reports contained very specific concerns by Woods, such as repeatedly noting potholes and other pavement problems "West of 14th St.," and what actions should be taken to fix the problem.

¶12. While Woods had seen the oaks on Highway 90 being trimmed before, this work was not done at his request. For his part, he had never reported any low-lying limbs nor anything in the roadway that might bump a vehicle up into a limb above the 14-foot cutoff. And Woods did not have any idea how anything under fourteen feet would hit an oak tree limb, "unless the branch was somehow already broken."

¶13. In his deposition, Woods was asked whether there were "any other procedures for checking the vertical compliance of a roadway other than windshield inspection." He did not know of any and had never used any other procedure.

¶14. The defendants sought summary judgment, arguing that the plaintiffs could not show there was a breach of the ministerial duty. In response, the Hollands and Calhouns argued

4

the inspection protocols were deficient on their face. The trial court granted summary judgment, finding that there was no evidence the inspections were deficient.

## STANDARD OF REVIEW

¶15. "The grant or denial of a motion for summary judgment is reviewed de novo." *Estate of Hudson v. Yazoo City*, 246 So. 3d 872, 876 (¶29) (Miss. 2018). "The evidence is viewed in the light most favorable to the party opposing the motion." *Id*. "Only if there is no genuine issue of material fact is the moving party entitled to summary judgment as a matter of law." *Id*. "Questions of law, which include proper application of the MTCA, also are reviewed de novo." *Id*.

## DISCUSSION

¶16. MDOT carries a ministerial duty to maintain highways "in such a way as to afford convenient, comfortable, and economic use thereof by the public at all times." Miss. Code Ann. § 65-1-65 (Rev. 2012). This includes the duty "to organize an adequate and continuous patrol for the maintenance, repair, and inspection of all of the state-maintained state highway system, so that said highways may be kept under proper maintenance and repair at all times." *Id*. Furthermore, precedent holds that the duty "to maintain and repair state highways" as well as "all acts in furtherance of that duty . . . are ministerial" unless "another statute makes a particular act discretionary." *Miss. Transp. Comm'n v. Adams ex rel. Adams*, 197 So. 3d 406, 414-15 (¶25) (Miss. 2016).

¶17. Under the Supreme Court's modern interpretation of the MTCA, a plaintiff may also maintain a claim for negligent maintenance or a "claim for failure of basic maintenance."

5

*Reverie Boutique LLC v. City of Waynesboro*, 282 So. 3d 1273, 1278, 1280 (¶39) (Miss. Ct. App. 2019). A "claim of negligence under the MTCA" has the four general components of any negligence claim: duty, breach, causation, and damages. *Smith v. Harrison County*, 67 So. 3d 815, 819 (¶13) (Miss. Ct. App. 2011).

¶18. The sole question in this appeal is whether the parade route was properly maintained and inspected.[1] MDOT argues the area was inspected once a month and that it had been inspected just ten days before the limb hit the parade float, and in doing so it fulfilled its ministerial duty "to maintain and repair state highways."

¶19. Furthermore, MDOT points out that after demonstrating it was indeed maintaining and repairing state highways, as shown by the testimony and reports of Tracy Woods, the Hollands and Calhouns did not respond with any evidence tying the oak tree limb to a failure by the defendants.

¶20. In response, the riders on the parade float essentially ask us to assume that because they were hit by a tree branch that the defendants breached a duty to keep the roadway clear. In support, they claim the inspector "simply guessed at the vertical compliance mandate by

---

[1] In their argument to the trial court, the Hollands and Calhouns insisted "this case is not centered on a failure to warn," but rather "the crux of the matter is whether [the defendants were] negligent for failing to inspect and maintain the highway's canopy and vertical clearance, thus, allowing a dangerous condition to persist." Likewise, on appeal they argued only there was a genuine dispute whether the defendants "inspected the vertical clearance of Highway 90 with sufficient care under the circumstances."

Because we resolve this appeal solely on whether the elements of general negligence were met, there is no need to address the statutory immunity provided for certain "open" and "obvious" dangers. *See* Miss. Code Ann. § 11-46-9(1)(v) (Rev. 2019) (providing in part "that a governmental entity shall not be liable for the failure to warn of a dangerous condition which is obvious to one exercising due care").

observing the road through his truck windows while at highway speeds." However, they did not support this argument with a showing that Woods violated any policy. Nor did they produce a policy from any other municipality or county which showed any other method of inspection. The plaintiffs also did not provide any competent expert testimony that challenged or refuted the inspection method used in Ocean Springs by the Department.

¶21. There is indeed a ministerial duty to keep the highway clear. However, the Hollands and Calhouns must support a claim for breach of this ministerial duty with evidence. On appeal, they argue that "[n]one of Mr. Woods 'windshield inspections' ever produced an observation of a limb that was lower than the required height nor did they ever produce any overhead clearance hazards whatsoever." This assertion is facially true, but ignores the rest of what the six reports by Woods do contain. To fill out a report, Woods had to survey an area for pavement problems, the condition of the shoulders, vegetation and drainage problems, guardrails, and the like. Of the six reports in the record, Woods had noted overgrown vegetation or specific problems with the roadway or shoulder. This record does not support the plaintiffs' argument that the inspection method was deficient on its face.

¶22. We will affirm a grant of summary judgment "when the non-moving party has failed to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Lefler v. Wasson*, 295 So. 3d 1007, 1009 (¶7) (Miss. Ct. App. 2020). The non-moving party at summary judgment cannot meet the element of causation with "a mere guess, speculation, or conjecture," as this "is insufficient to create a genuine issue of material fact." *Rogers v. Barlow Eddy Jenkins*

7

*P.A.*, 22 So. 3d 1219, 1223 (¶14) (Miss. Ct. App. 2009); *see also Mallery v. Taylor*, 805 So. 2d 613, 620 (Miss. Ct. App. 2002) (finding that "[c]onclusory allegations, bare assertions, and speculations do not suffice" to successfully oppose summary judgment).

¶23. The trial court correctly observed that "there [was] no evidence here that the 'windshield' inspections conducted by MDOT were deficient other than argument of counsel." Even if we assume the highway inspections were deficient, there was no evidence to causally link a breach to the injuries suffered by the Hollands and Calhouns. The absence of facts on required areas of proof means there was no reversible error in the trial court's grant of summary judgment.[2]

¶24. Because the plaintiffs in this case did not produce any evidence which would bring their claim for causation beyond the realm of speculation, let alone showing how there was a specific breach of the ministerial duty, we affirm the grant of summary judgment.

---

[2] The separate opinion focuses on the undisputed facts that MDOT did not have a specific protocol guiding inspections and that the maintenance superintendent did not get out of his truck to measure the trees on Highway 90. Despite the lack of a written protocol, the very existence of monthly inspections and maintenance reports reveals that MDOT was indeed focused on ensuring roadways were clear and safely marked. While the separate opinion is correct that all negligence cases do not require expert opinion to establish causation, there was *no* testimony in this case—expert or lay—that connected any alleged deficiency in the inspections to the tree limb hitting the parade float.

Stretched to its limits, the separate opinion would essentially impose a negligence per se duty on the State, finding that any time a vehicle hits a limb on a roadway it would automatically impose liability on the State. Yet as set out above, a plaintiff in a negligence case of this type carries the burden to provide proof on all four elements of their negligence claim. *See Estate of Kiihnl v. Family Dollar Stores of Miss. Inc.*, 197 So. 3d 920, 924 (¶10) (Miss. Ct. App. 2016) (finding that "[t]o survive a motion for summary judgment, the plaintiff must allege facts tending to prove all four elements"). While the existence of a duty was not in question, there is an absence of proof in this record on the other elements of negligence.

¶25.   **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE AND SMITH, JJ., CONCUR.  McDONALD, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.  LAWRENCE, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS, J.; McDONALD, J., JOINS IN PART.  EMFINGER, J., NOT PARTICIPATING.**

**LAWRENCE, J., DISSENTING:**

¶26.   I respectfully dissent from the majority's holding that no genuine issue of material fact exists as to whether MDOT breached its duty to inspect and maintain vertical clearance over Highway 90 and whether that alleged breach caused the incident that injured the Plaintiffs. As recognized by the majority, under Mississippi Code Annotated section 65-1-65, MDOT has a duty to "maintain all highways which have been or which may be hereafter taken over by the state highway department for maintenance," and it was "the duty of the director [. . .] to organize an adequate and continuous patrol for the maintenance, repair, and inspection of all of the state-mandated state highway system, so that said highways may be kept under proper maintenance and repair at all times."  Miss. Code Ann. § 65-1-65 (Rev. 2012). "Because Section 65-1-65 requires [MDOT] to maintain and repair state highways, that duty—and all acts in furtherance of that duty—are ministerial unless . . . another statute makes a particular act discretionary." *Little v. Miss. Dep't of Transp.*, 129 So. 3d 132, 138 (Miss. 2013).

¶27.   In their complaint, the Plaintiffs alleged the Defendants were negligent in "failing to properly inspect and maintain the subject trees and vegetation over the roadway/highway" and in "failing to comply with all standards, specifications, guidelines, maintenance and

9

safety rules concerning minimum height requirements over the subject highway." "In asserting [their] claim of negligence under the MTCA, to overcome summary judgment, [the Defendants] must first show a genuine issue of material fact regarding each of the four elements of negligence[:]" (1) duty, (2) breach of duty, (3) causation, and (4) damages. *Smith v. Harrison County*, 67 So. 3d 815, 819 (¶13) (Miss. Ct. App. 2011); *see* Maj. Op. at (¶17).

¶28.    The following facts are undisputed. The Plaintiffs were struck by a branch while riding on a Saint Patrick's Day parade float, the height of which was 11.6 feet. The maximum height allowed for a vehicle on the roadways of Mississippi is 13 feet and 6 inches. MDOT's policy is to maintain at least 14 feet of vertical clearance on highways to ensure that vehicles pass under any vertical obstacles without collision. The 11.6-foot float, which was measured by MDOT's expert, was obviously lower than 14 feet and struck a tree branch hanging over Highway 90, which was inspected for safety a few weeks before the incident. Under the law, the Defendants clearly had a duty to every citizen using the roadway to conduct proper inspections of vertical obstacles and repair and maintain those highways to the benefit of the traveling public. The key question is whether there is a genuine issue of material fact as to whether MDOT breached that duty by failing to recognize and trim a low-lying tree limb during its routine maintenance and inspection.

¶29.    The crux of the Plaintiffs' argument hinges on the deposition testimony of MDOT's maintenance superintendent Tracy Woods. Woods admitted that MDOT had no "set procedure" or "specific protocol" to do highway inspections and that he was tasked with

10

inspecting "everything" in that area once a month. Woods utilized a "maintenance inspection report" created and used by MDOT to guide its employees during routine monthly inspections.[3] The report lists specific items employees are to check while conducting the road inspections. The maintenance inspection report requires MDOT employees to inspect for fourteen different items, including the following: pavement potholes, pavement rutting, pavement cracking, shoulder conditions, washing, obstructions, vegetation, drainage, roadway signs, pavement markings, reflective markers, guardrails, attenuators, and median barriers.[4]

¶30.    In addition to the items listed on the report, Woods testified that he also conducted a "windshield inspection" to check for low-lying limbs or other vertical obstacles. This inspection consisted of him looking for obstacles through his windshield while driving. Woods testified that he had a measuring tape in his vehicle but never got out of his vehicle to measure the heights of trees. In fact, when asked if he had "ever physically measured the height of any tree," he responded, "No." When asked how he determined if any limbs hung below 14 feet, he replied, "Just basically a lot of times I notice bigger trucks going under them and stuff like that." When asked if it was possible that a limb on Highway 90 was lower than 14 feet, he responded, "Yes."

¶31.    Woods testified that he last inspected the area of the accident on March 4, 2015. The

[3] The March 4, 2015, maintenance inspection report is attached as an appendix to this opinion.

[4] It is interesting to note that the maintenance inspection report created and used by MDOT did not have any notation for an employee to indicate whether he checked for vertical height clearance or the height of any obstacle.

11

Defendants provided Woods's maintenance inspection report, which indicated that he was driving westbound at the time of his inspection—the opposite side of the six-lane road of the accident in question. During this inspection, he noted on the maintenance inspection report that he inspected thirteen of the fourteen items listed. Further, he testified that his inspection included the "windshield inspection" for vertical obstacles. Woods testified that he did not stop at the intersection to conduct the inspection of the fourteen items listed on the maintenance inspection report or the "windshield inspection" for vertical obstacles. In fact, he testified this inspection occurred while he was driving "45 to 50" miles per hour through the intersection. Woods made no notation on the maintenance inspection report of the height of any tree limb or that he actually even conducted that type of vertical height inspection. There is no doubt that the maintenance inspection report from March 4, 2015, indicates Woods inspected for potholes, pavement rutting, pavement cracking, et cetera, as all are marked as having occurred. But the one inspection that could have prevented the Plaintiffs from colliding with a low-lying tree limb is not only absent from the report; there is no place on the report to indicate whether such an inspection was even done.

¶32. The Plaintiffs proved to the court that according to MDOT regulations, the vertical height of vehicles had to be less than 13.6 feet and that the height of any vertical height obstacle had to be more than 14 feet. MDOT had that policy to protect the traveling public. Yet on the day in question, the Plaintiffs, riding in a vehicle no higher than 11.6 feet, collided with a limb obviously lower than 11.6 feet otherwise there would have been no collision. MDOT claims that the branch was more than 14 feet on March 4, 2015, according to a drive-

12

by inspection that was done without any measurements or measuring device while the inspector rode through the intersection at "45 to 50" miles per hour. However, MDOT makes that allegation without any documentation indicating that the height of the tree limb at that intersection was actually inspected, without any measurement of that tree limb,[5] and based on the testimony of one employee who never stopped at that intersection but inspected some thirteen different things while going 45 to 50 miles per hour. That created a genuine issue of material fact as to whether there was an negligent inspection or not. I respectfully dissent because I would find that summary judgment should have been denied, and the parties should have been allowed to have their day in court.

¶33. Further, the majority states that "[t]he trial court correctly observed that 'there [was] no evidence here that the windshield inspections conducted by MDOT were deficient other than the arguments of counsel.'" In support of its finding, the majority states that "[t]he plaintiffs also did not provide any competent expert testimony which challenged or refuted the inspection method used in Ocean Springs by the Department." However, "[t]he general rule in Mississippi is that expert testimony is not required where the facts surrounding the alleged negligence are easily comprehensible to a jury." *T.L. Wallace Constr. Inc. v. McArthur, Thames, Slay, & Dews PLLC*, 234 So. 3d 312, 330 (¶68) (Miss. 2017) (quoting *Wal-Mart Stores Inc. v. Johnson*, 807 So. 2d 382, 388 (¶15) (Miss. 2001)).

¶34. I would find an expert was not necessary in this case because the facts surrounding the alleged negligence would have been easily understood by a trier of fact. During his

---

[5] Woods testified he did not conduct any actual measurements but performed a visual "windshield inspection" only.

inspection of "everything," which included the "windshield inspection," Woods was responsible for inspecting fourteen different items listed on the maintenance inspection report and the height of vertical obstacles. According to the maintenance inspection report, Woods rode on Highway 90 from the Alabama State line to the Harrison County line. During that ride on Highway 90 through Jackson County, he produced one report with one page for the entire ride. That lengthy ride and mass inspection occurred while he drove 45 to 50 miles per hour. During his mass inspection, he is presumably looking down at the road for pavement issues, looking on the sides of the road for shoulder and sign issues, and looking up at the trees to check for low-lying limbs, all while driving 45 to 50 miles per hour. A trier of fact could quite easily comprehend, under those circumstances, whether Woods's inspection was negligent and caused the collision that injured the Plaintiffs.

¶35. Further, contrary to the majority's assertion, the dissent does not stand for the proposition of imposing a "negligence per se" duty on the State. Rather, the dissent does stand for the proposition that pleadings in a case matter and that parties are bound by those pleadings. In this case, the Defendants' motion for summary judgment raised a legal issue as to the breach-of-duty element.[6] The Defendants did not argue a legal failure on the elements of proximate cause or damages. It follows that the Plaintiffs' response therefore responded to the issue raised in the Defendants' summary judgment motion—breach of duty.

---

[6] In addition to the breach-of-duty issue in the motion for summary judgment, the Defendants did include two other grounds—that they were immune because MDOT had no knowledge of the "dangerous condition," and the "low lying tree limb" was an "open and obvious" condition for which they had no duty to warn. The Plaintiffs made clear in their response that this case was "not centered on a failure to warn," so those two other issues are not part of the error alleged in this appeal.

14

Further, the trial court's order granting the Defendants' motion for summary judgment only addressed the legal element of breach of duty. The trial court did not address proximate cause or damages. Yet for the first time on appeal, the majority opinion in footnote two takes it upon itself to address those two non-argued elements and calls to task the Plaintiffs for failing to respond by noting "a plaintiff in a negligence case of this type carries the burden to provide proof on all four elements of their negligence claim," and "there is an absence of proof in this record on the other elements of negligence." I respectfully dissent because a party opposing a motion for summary judgment should not be required to respond to legal issues not raised in the motion for summary judgment.

¶36. In conclusion, I would find that there are genuine issues of material fact as to whether MDOT breached the duty it admitted it owed to the traveling public. Those genuine issues of material fact should have prevented summary judgment from being granted, and this case should have proceeded to trial. Thus, I would reverse the circuit court's order granting summary judgment in favor of MDOT.

**WESTBROOKS, J., JOINS THIS OPINION. McDONALD, J., JOINS THIS OPINION IN PART.**

15

## Appendix

**MDOT Maintenance Inspection Report**

Date Inspected: 3-4-15  Time 9:10 to 10:45  Inspector: T Woods

County: 30  Route: 90  Direction Of Travel: N S E W  Road Surface: ☐ Dry ☐ Wet

Route Termini: Al state lie to Harrison c/c

Pavement Potholes: ☐ No ☑ Yes  Location(s): At some turn Bays, Near 140 St.

Pavement Rutting: ☐ No ☑ Yes ☐ Request Engineering Review

Pavement Cracking: ☐ No ☑ Yes ☐ Request Engineering Review

Other Observations:

Shoulder Condition: ☐ Ok ☐ High ☑ Low  Location(s): Some Low At turn Lanes

Washing: ☑ No ☑ Yes  Action:

Obstructions: ☑ No ☐ Yes  Action:

Other Observations:

Vegetation: ☐ Ok ☑ Overgrown  Action: Cross & side Drains

Drainage: ☐ Ok ☑ Obstructed  Action:

Other Observations:

Roadway Signs: ☑ Ok ☐ Missing/Down  Location(s):

Pavement Markings: ☑ Ok ☐ Request Engineering Review

Reflective Markers: ☑ Good Condition ☐ Request Engineering Review

Other Observations:

Guardrail: ☑ Ok ☐ Damaged  Location(s):

Attenuators: ☑ Ok ☐ Damaged  Location(s):

Median Barriers: ☐ Ok ☐ Damaged  Location(s):

Other Observations:

Signature of Inspector: B Wos

Engineer's Comments:

MDOT 015
**Clerk Papers 280**

16