# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-01109-COA

**PARISH TRANSPORT LLC AND ERIC PARISH**
 
**APPELLANTS/ CROSS-APPELLEES**

**v.**

**JORDAN CARRIERS INC.**
 
**APPELLEE/ CROSS-APPELLANT**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/06/2019 |
| TRIAL JUDGE: | HON. DEBRA W. BLACKWELL |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | MARK D. MORRISON |
| | KEN R. ADCOCK |
| ATTORNEY FOR APPELLEE: | GRAYSON RANDOLPH LEWIS |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 08/25/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GREENLEE, J., FOR THE COURT:**

¶1.     After Jordan Carriers Inc. (Jordan) sold heavy haul equipment to Lone Star Transportation LLC (Lone Star), Jordan filed a motion for a declaratory judgment in the Adams County Circuit Court requesting, among other things, that the court find that it did not have a contractual obligation to sell the same equipment to Parish Transport LLC (Parish).

¶2.     Subsequently, Parish filed a complaint for breach of contract and negligent misrepresentation in the Jones County Circuit Court. Jordan then filed a motion to dismiss Parish's complaint or, in the alternative, to transfer venue. The court denied Jordan's motion

to dismiss but transferred venue and consolidated Parish's action with Jordan's action in Adams County.

¶3.     Then Jordan moved for summary judgment in the Adams County Circuit Court, claiming that it did not have an enforceable contract with Parish for the sale of the equipment. The court agreed and granted summary judgment.

¶4.     On appeal, Parish claims that it had an enforceable contract with Jordan and that the court erred by granting summary judgment. Jordan cross-appeals, claiming its motion to dismiss should have been granted based on insufficient service of process and/or priority jurisdiction and that Parish's appeal is moot. We affirm the circuit court's grant of summary judgment.

## FACTS AND PROCEDURAL HISTORY

¶5.     In February 2016, Doug Jordan (Doug), Vice President of Jordan, and Eric Parish (Eric), President of Parish, began discussing via email the sale of Goldhofer heavy haul equipment.

¶6.     In an email dated April 12, 2016, Doug offered the equipment for $1,443,000. The email was signed "Doug Jordan." On April 20, 2016, at 10:49 a.m., Eric emailed a "formal" counteroffer of $1,250,000. Eric stated, "Please let me know what you need from me[,] and we will get this deal closed and behind us both." At 1:21 p.m., Doug responded and said that he would have to discuss the counteroffer with his brother, Charles Jordan (Charles). Specifically, Doug stated, "Got to talk to my partner before we take a mule kick in the nuts on this deal. I'm sure we will finalize today." The email was signed "Doug Jordan." At

2

1:25 p.m., Eric responded, "No rush just wanted you to have it in writing so you know that I am serious about this deal and my offer." Eric also stated, "We have [to] get this deal closed out pretty quickly once we pull the trigger."

¶7.     At 3:00 p.m. Doug responded, "Ok.  Let's do it.  I need to get my people in touch with your people.  Do you have a preference on how the money is spread out on the equipment?" The email stated:  "Sent from my iPhone."[1]  At 3:04 p.m., Eric responded, "Ok Great" and asked if he could breakdown the equipment for two different lenders.  At 3:37 p.m., Doug responded, "Yes." At 3:37 p.m. Eric said, "I will have my controller contact you or who do you want him to call?  We will get the ball bouncing?"  At 3:40 p.m., Doug told him to call "Lynda."[2]

¶8.     Two days later, on April 22, 2016, at 9:29 a.m., Eric sent a text message to Doug that said, "We have tried calling Lynda yesterday and today with no luck.  Is she out?"  The record does not indicate that Doug responded at this time.  At 9:52 a.m., Doug received an email from another bidder—Tex Robbins with Lone Star.  The email stated:

> Doug, per our conversation last night, Lone Star agrees to pay . . . [for] the attached list of equipment.  We will need to coordinate a site visit early next week if possible, to complete a full inventory. . . .  Please let me know who my CFO . . . will need to coordinate with regarding execution of the Bill of Sale and wire instructions.

Robbins agreed to purchase the same equipment plus additional equipment for more money than Eric.  At 12:39 p.m., Doug emailed Eric and stated:

---

[1] During his deposition, Doug was asked what he meant when he said, "[L]et's do it." He responded, "Let's get a deal done."

[2] Doug's 3:37 p.m. and 3:40 p.m. emails also stated: "Sent from my iPhone."

> Sorry I did not get back with you yesterday, but I got with my people and a contract has already been entered into for the sale of all the Goldhofer equipment. I hate that I cannot continue this deal with you but if something were to fall through you will be the first to know.

The email was signed "Doug Jordan." At 3:25 p.m., Eric responded:

> It is Parish Transport's full understanding that we have a binding and enforceable agreement for the purchase of [the equipment]. We sent a formal offer to you by email on April 20, 2016 at 10:49 a.m. On April 20, 2016 at 3:00 p.m. you agreed to accept the offer we placed. Parish Transport has put forth financial expenditures based upon this agreement as well entering into transportation agreements with our customers utilizing this equipment. Parish Transport stands to incur substantial losses if Jordan Carriers/ Jordan Heavy Haul does not uphold the agreement.

> We request that you honor the agreement at hand or we will be forced to retain an attorney to pursue Jordan Carriers/ Jordan Heavy Haul for damages. Please advise if Jordan Carriers/ Jordan Heavy Haul will proceed with this agreement with Parish Transport.

¶9. According to Jordan, on May 2, 2016, Parish filed a complaint against Jordan in the Hinds County Chancery Court requesting specific performance of their alleged contract and a temporary restraining order precluding Jordan from selling the equipment to Lone Star. According to Jordan, although Parish ultimately dismissed the complaint, Parish continued to threaten litigation.

¶10. On May 13, 2016, Jordan filed a motion for a declaratory judgment in the Adams County Circuit Court. Jordan asked the court to find, among other things, that it did not have a contract with Parish.

¶11. On June 21, 2016, Parish filed a complaint in the Jones County Circuit Court. According to Parish, Goldhofer equipment was manufactured in Germany, and Jordan was selling the only such equipment located in the United States. Parish alleged breach of

4

contract and negligent misrepresentation. Parish claimed that it had suffered damages in the amount of $531,400 from having to lease other equipment and ultimately purchase substitute equipment from the manufacturer for a price exceeding what it would have paid Jordan. The proof of service indicates that Charles was personally served with the summons and complaint on July 7, 2016.[3]

¶12. On August 4, 2016, Jordan filed a motion to dismiss Parish's complaint for lack of jurisdiction and/or improper venue or, in the alternative, to transfer venue to Adams County. Jordan noted that it had previously filed a motion for declaratory judgment in Adams County that raised identical issues to Parish's complaint in Jones County. On August 12, 2016, Charles executed an affidavit swearing that he had never been served with a summons or complaint.[4]

¶13. After a hearing, on November 3, 2016, the Jones County Circuit Court entered an order denying Jordan's motion to dismiss but granting Jordan's alternative motion to transfer venue to Adams County.

¶14. On September 6, 2018, Jordan filed a motion for summary judgment in the Adams County Circuit Court, arguing that the emails between the parties did not satisfy the statute of frauds. After a hearing, on June 6, 2019, the court granted summary judgment. The court found that "the emails between the parties [did] not constitute a valid, binding, written contract signed by . . . the party against whom enforcement [was] sought pursuant to

---

[3] Around the same time, Parish filed a motion to dismiss Jordan's motion for declaratory judgment or, in the alternative, to transfer venue to Jones County.

[4] The affidavit was filed on October 26, 2016.

Mississippi law and the Statute of Frauds."

## STANDARD OF REVIEW

¶15.    The grant or denial of summary judgment is reviewed de novo. *Wright v. R.M. Smith Investments L.P.*, 210 So. 3d 555, 557 (¶6) (Miss. Ct. App. 2016). "Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." *Id*. (quoting *Thrash v. Deutsch, Kerrigan & Stiles LLP*, 183 So. 3d 838, 841 (¶10) (Miss. 2016)). "The moving party bears the burden to show that no genuine issue of material fact exists, and the evidence must be viewed in the light most favorable to the nonmovant." *Id.*

## DISCUSSION

¶16.    We must decide whether an enforceable contract existed between Jordan and Parish. Mississippi Code Annotated section 75-2-201(1) (Rev. 2016) provides, in part:

> [A] contract for the sale of goods for the price of five hundred dollars ($500.00) or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties *and signed* by the party against whom enforcement is sought or by his authorized agent or broker.

Miss. Code Ann. § 75-2-201(1) (emphasis added).

¶17.    Mississippi has adopted the Uniform Electronic Transactions Act (UETA). *See* Miss. Code Ann. §§ 75-12-1 to 75-12-39 (Rev. 2016). The UETA defines "electronic signature" as "an electric sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." Miss. Code Ann. § 75-12-3(8). Furthermore, the UTEA provides that a "signature may not be denied legal effect

6

or enforceability solely because it is in electronic form." Miss. Code Ann. § 75-12-13(a).

¶18. In this case, Doug and Eric began discussing the sale of equipment in February 2016 via email. In an email dated April 12, 2016, Doug offered the equipment for $1,443,000. The email was signed "Doug Jordan." On April 20, 2016, at 10:49 a.m., Eric emailed a counteroffer of $1,250,000. Eric stated, "Please let me know what you need from me[,] and we will get this deal closed and behind us both." At 1:21 p.m., Doug responded that he would have to discuss the counteroffer with his brother. The email was signed "Doug Jordan." At 1:25 p.m., Eric responded, "No rush just wanted you to have it in writing so you know that I am serious about this deal and my offer." Eric also stated, "We have [to] get this deal closed out pretty quickly once we pull the trigger."

¶19. At 3:00 p.m. Doug responded, "Ok. Let's do it. I need to get my people in touch with your people. Do you have a preference on how the money is spread out on the equipment?" The email stated: "Sent from my iPhone." At 3:04 p.m., Eric responded, "Ok Great" and asked if he could breakdown the equipment for two different lenders. At 3:37 p.m., Doug responded, "Yes." This email also stated, "Sent from my iPhone." At 3:37 p.m. Eric said, "I will have my controller contact you or who do you want him to call? We will get the ball bouncing?" At 3:40 p.m., Doug told him to call Lynda. This email stated, "Sent from my iPhone" as well.

¶20. Merely sending an email does not satisfy the signature requirement. The email sent by Doug at 3:00 p.m. stating, "Ok. Let's do it. . . ." did not contain a signature. As discussed, an electronic signature is "an electric sound, symbol, or process attached to or logically

7

associated with a record and executed or adopted by a person with the intent to sign the record." Miss. Code Ann. § 75-12-3(8). An email that states "Sent from my iPhone" does not indicate that the sender intended to sign the record.

¶21. Furthermore, Jordan's email was ambiguous. Although Jordan stated, "Ok. Let's do it," he explained during his deposition that he meant, "Let's get a deal done." His email also stated, "I need to get my people in touch with your people," suggesting that further action was required. Without a signature, an enforceable contract does not exist.

¶22. Because we affirm the circuit court's grant of summary judgment, we decline to address the issues raised in Jordan's cross-appeal.

¶23. **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., WESTBROOKS AND McCARTY, JJ., CONCUR. BARNES, C.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. McDONALD AND LAWRENCE, JJ., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**