# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-CA-01472-SCT

*IKE W. THRASH AND DAWN INVESTMENTS, LLC*

*v.*

*DEUTSCH, KERRIGAN & STILES, LLP*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/16/2014 |
| TRIAL JUDGE: | HON. LAWRENCE PAUL BOURGEOIS, JR. |
| TRIAL COURT ATTORNEYS: | NICHOLAS VAN WISER |
| | WILLIAM E. WHITFIELD, III |
| | M. JASON SUMRALL |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | NICHOLAS VAN WISER |
| ATTORNEYS FOR APPELLEE: | WILLIAM E. WHITFIELD, III |
| | MATTHEW JASON SUMRALL |
| | MATTHEW D. MILLER |
| | NICHOLAS KANE THOMPSON |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 01/14/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1. This appeal arises from a trial court's grant of summary judgment dismissing Ike Thrash's and Dawn Investments LLC's claims for negligence and breach of fiduciary duty against Deutsch Kerrigan & Stiles, LLP (DKS). DKS filed suit in circuit court against Thrash, Dawn Investments, and U.S. Capital seeking a declaratory judgment that the failure of Joel L. Blackledge, a former DKS attorney, to conduct a foreclosure sale properly was not

the proximate cause of Thrash's and Dawn Investments' damages. Thrash and Dawn Investments counterclaimed, alleging that Blackledge was negligent and breached his fiduciary duty by improperly conducting the foreclosure sale, leading to Thrash and Dawn Investments suffering damages. The parties agreed to dismiss DKS's complaint for declaratory judgment and proceed under Thrash's and Dawn Investments' counterclaim. The parties were realigned, naming Thrash and Dawn Investments (the Dawn Plaintiffs) as Plaintiffs and DKS as Defendant. Both parties filed motions for summary judgment, and the trial court granted DKS's motion. The Dawn Plaintiffs then filed this appeal. We find that the trial court was correct in finding that DKS did not owe the Dawn Plaintiff a duty.

**FACTS AND PROCEDURAL HISTORY**

¶2.    In 2005, Coastal Land Development Company (Coastal) and Richard Landry purchased two pieces of property, financed by U.S. Capital.  Coastal and Landry executed a promissory note in favor of U.S. Capital for $4,500,000, naming Joel L. Blackledge, an associate with DKS, as the trustee.  Coastal and Landry defaulted on the loan several times, and in August 2007, Blackledge initiated foreclosure proceedings. Blackledge  posted the Notice of Substituted Trustee's Sale at the Harrison County Courthouse, and the Notice was published in *The Sun Herald* for three consecutive weeks on the following Wednesdays, August 15, 22, and 29, 2007. On Thursday, August 30, 2007, Blackledge conducted the foreclosure sale. Ike Thrash, the managing member of Dawn Investments, acting on its behalf, was the only bidder at the sale and offered to pay $5.6 million for both properties. Blackledge prepared a trustee's deed on August 30, 2007, in favor of Dawn Investments.

¶3.     Thrash deposited the $5.6 million dollars into the trust account of his attorney, Charliene Roemer. On Thursday, September 6, 2007, the trustee's deed was delivered to Dawn Investments. Thrash then authorized the transfer of the funds to U.S. Capital.  The transfer occurred at 1:21 p.m. At 11:26 that morning, Coastal filed for Chapter 11 Bankruptcy. Neither Thrash nor Blackledge was aware of the bankruptcy filing, but William J. Little Jr., Coastal's bankruptcy attorney, notified Roemer through email on September 6, at 12:46 p.m., of the bankruptcy filing.

¶4.     Subsequently, Thrash  and Roemer discovered that the foreclosure sale had been conducted improperly. According to the statute, the foreclosure sale must occur  one week following the last  day of publication; however, the foreclosure sale was conducted one day after the last day of publication. Miss. Code Ann. § 89-1-55 (Rev. 2011); *Osborne v. Neblett*, 65 So. 3d 311, 313 (Miss. Ct. App. 2011). Thrash notified U.S. Capital of the error and demanded the funds be returned, but U.S. Capital refused. The Dawn Plaintiffs then filed suit against U.S. Capital and Blackledge in chancery court. In October 2007, this suit was removed to the United States District Court for the Southern District of Mississippi and then was transferred to Bankruptcy Court.

¶5.     In September 2007, Thrash filed a Motion for Relief from Automatic Stay or in the Alternative, for Declaratory Relief with the Bankruptcy Court of the Southern District of Mississippi, requesting the court to find that Coastal was divested of its interest in the properties following the foreclosure sale. Later that month, Coastal brought suit against the Dawn Plaintiffs and Blackledge in the United States Bankruptcy Court for the Southern

District of Mississippi, alleging that the foreclosure sale was void and requesting that the transfer of the properties be avoided. In January 2008, Dawn Investments entered a Settlement Agreement with Coastal whereby Coastal agreed to sell the Brodie Road Property and the Lemoyne Boulevard Property to Dawn Investments for approximately $11 million.[1] Coastal agreed to dismiss the suit it had filed against Dawn Investments and each party agreed to release the other from all claims and liability. The Bankruptcy Court approved the Settlement Agreement. In February 2008, the Bankruptcy Court dismissed the Motion for Relief without prejudice, per Dawn Investment's motion. Subsequently, the Bankruptcy Court entered an order finding the foreclosure sale on August 30, 2007, to be void and of no effect.

¶6.     In November 2007, the Dawn Plaintiffs entered into a Settlement Agreement with U.S. Capital, agreeing to pay U.S. Capital an additional 425,000. U.S. Capital agreed to assign all of its claims against Coastal and Landry to the Dawn Plaintiffs. The Dawn Plaintiffs also agreed to release U.S. Capital and its agents from liability and cause the chancery court claim against U.S. Capital, which had been removed to Bankruptcy Court be dismissed with prejudice. In March 2008, Landry and Coastal filed a motion to dismiss the Chapter 11 bankruptcy. The motion was granted.

¶7.     DKS then filed suit in circuit court against the Dawn Plaintiffs and U.S. Capital. The Dawn Plaintiffs counterclaimed. DKS's complaint for declaratory judgment was dismissed

---

[1]The purchase price of the properties was $11,331,373.24 but $10,831,373.24 was used to offset the debts of both properties. Dawn Investments paid Coastal the remaining $500,000 in cash at the closing.

and the parties were realigned, naming Thrash and Dawn Investments as plaintiffs and DKS as the defendant. In March 2010, the Dawn Plaintiffs filed a motion for summary judgment, seeking judgment on the negligence and breach-of-fiduciary duty claims. In February 2011, DKS responded to the motion for summary judgment and filed its own motion for summary judgment, seeking dismissal of the Dawn Plaintiffs' claims. In September 2014, the trial court granted DKS's motion, dismissing all of the Dawn Plaintiffs' claims. This appeal followed.

¶8.     Thrash raises the following four issues on appeal:

1.     **Whether the trial court erred in holding that DKS, the substituted trustee under the land deed of trust, owed no duty of care to the Dawn Plaintiffs, third-party bidders at the foreclosure sale, in the performance of the foreclosure sale.**

2.     **Whether the trial court erred in holding that the foreclosure sale, which was subsequently determined to be void, was not the proximate cause of the Dawn Plaintiffs' injury.**

3.     **Whether the trial court erred in rendering a final judgment on DKS's motion for summary judgment without specifically addressing the Dawn Plaintiffs' breach-of-fiduciary duty claim.**

4.     **Whether the trial court erred in holding that DKS owed no fiduciary duty to the Dawn Plaintiffs with respect to the handling of the funds paid by the Dawn Plaintiffs to complete the foreclosure sale.**

¶9.     Because the first issue is dispositive, we will not discuss the remaining issues.

## ANALYSIS

¶10.     When reviewing a trial court's grant or denial of a motion for summary judgment, this Court applies a *de novo* standard of review. ***City of Jackson v. Sutton,*** 797 So. 2d 977, 979

5

(Miss. 2001). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M.R.C.P. 56(c). The moving party bears the burden to show that no genuine issue of material fact exists, and the evidence must be viewed in the light most favorable to the nonmovant. *Monsanto Co. v. Hall*, 912 So. 2d 134, 136 (Miss. 2005). Otherwise, the motion should be denied.

¶11. In a negligence action, the plaintiff must prove by a preponderance of the evidence that there was a duty, breach, causation, and damages. *Entrican v. Ming*, 962 So. 2d 28, 32 (Miss. 2007). If the plaintiff fails to prove each element, summary judgment is appropriate.

¶12. The trial court granted summary judgment in favor of DKS after finding no material fact issue as to the negligence or the breach-of-fiduciary duty claims. As to the negligence claim, the trial court cited *Wansley v. First National Bank of Vicksburg*, 566 So. 2d 1218, 1223 (Miss. 1990), stating:

> A trustee under a deed of trust does not assume the important obligations which in some instances are cast upon a trustee by operation of law. The Trustee of a trust deed is not a trustee in the strict sense of the word. The role of such a trustee is more nearly that of a common agent of the parties to the instrument.

¶13. The Court held that, because neither of the Dawn Plaintiffs was a party or signatory to the Deed of Trust, Blackledge did not owe either a duty. The Dawn Plaintiffs, however, contend that the trial court erred in its ruling because, as a third-party purchaser, DKS owed them a legal duty to conduct the sale properly and reasonably could have foreseen that Thrash would rely on Blackledge's work. Further, the Dawn Plaintiffs contend that, had the sale been renoticed and held again, Thrash would not have lost the $5.6 million dollars it wired

6

to U.S. Capital. We find that the trial court's judgment should be affirmed because Blackledge, as trustee, did not owe a legal or fiduciary duty to the Dawn Plaintiffs.

¶14. Regarding a deed of trust, this Court has found that "[t]he role of such a trustee is more nearly that of a common agent of the parties to the instrument." *Wansley*, 566 So. 2d at 1223. The deed of trust in this case named Coastal and Landry as the debtors, U.S. Capital as the beneficiary, and Blackledge as the trustee. Accordingly, as trustee, Blackledge owed a duty to the parties to the instrument: U.S. Capital, the beneficiary, and Coastal and Landry, the debtors. *Wansley*, 566 So. 2d at 1223 ("The trustee is little more than an agent, albeit for both parties, and the writing prescribes his duties."). Blackledge, however, did not owe a legal duty or fiduciary duty to the Dawn Plaintiffs as a purchaser in the foreclosure sale. Thrash was not a party to the deed of trust; neither did he have a contractual relationship with Blackledge.

¶15. To determine whether a fiduciary relationship exists in a commercial transaction, the Court considers "whether (1) the parties have shared goals in each other's commercial activities, (2) one of the parties places justifiable confidence or trust in the other party's fidelity, and (3) the trusted party exercises effective control over the other party." *Hartman v. McInnis*, 996 So. 2d 704, 708 (Miss. 2007). "These factors must exist beyond those features common to every free-market transaction, such as the hope by both parties that the transaction is profitable, trust of the lender in handling the loan, and the lender's greater familiarity with the loan process." *Id*. at 709.

¶16. As to the first prong, the Dawn Plaintiffs contend that they had a "shared goal" with DKS because DKS was the seller of the property, and Thrash, acting on behalf of Dawn Investments, was the buyer. As to the second prong, the Dawn Plaintiffs contend that they placed trust in DKS because, at the direction of Blackledge, Thrash authorized his attorney to wire $5.6 million to U.S. Capital. As to the third prong, the Dawn Plaintiffs contend that Blackledge had exercised control because Blackledge had conducted the sale, was authorized to dispose of the property, and because he had instructed Thrash to transfer the funds to U.S. Capital.

¶17. Nevertheless, the Dawn Plaintiffs have failed to show that there was a fiduciary relationship. On the first prong, that the parties hope the transaction be profitable is insufficient. The Court has clearly stated that "features that are common to every free-market transaction," such as the hope of a profitable transaction, do not meet the criteria for a fiduciary relationship. *McInnis*, 996 So. 2d at 708.

¶18. The Dawn Plaintiffs' reasoning regarding the second prong also is insufficient. Thrash should have consulted with his attorney before he authorized the transfer of $5.6 million and should not have relied on Blackledge, who was not Thrash's representative.

¶19. Lastly, Blackledge did not exercise control over the Dawn Plaintiffs. As trustee, Blackledge had authority to conduct the foreclosure sale and dispose of the property. This is common authority given to trustees in foreclosure dealings and does not signify that Blackledge exercised control over the Dawn Plaintiffs. Moreover, Thrash authorized the transfer of the funds.

¶20. Further, Roemer, Thrash's attorney, could have discovered that the sale had been conducted prematurely before she transferred the funds. Blackledge sent Roemer the Trustee's Deed on Thursday, September 6, 2007, one week after the foreclosure sale. The Trustee's Deed included the dates of publication, August 15, 22, and 29, and the date of the actual sale, August 30. Roemer had the opportunity to verify whether the foreclosure sale met the requirements of the statute but apparently failed to do so. Although Blackledge prematurely conducted the sale, he did not have a duty to the Dawn Plaintiffs.

## CONCLUSION

¶21. Based on the above analysis, this Court affirms the judgment of the Harrison County Circuit Court.

¶22. **AFFIRMED.**

**DICKINSON, P.J., KITCHENS, KING AND COLEMAN, JJ., CONCUR. WALLER, C.J., RANDOLPH, P.J., LAMAR AND MAXWELL, JJ., NOT PARTICIPATING.**